935 A.2d 850

OCEANPORT HOLDING, L.L.C., PLAINTIFF–APPELLANT, v. BOR-
OUGH OF OCEANPORT AND PLANNING BOARD OF THE
BOROUGH OF OCEANPORT, DEFENDANTS–RESPONDENTS,
AND ZONING BOARD OF THE BOROUGH OF OCEANPORT,
DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued September 11, 2007—Decided December 7, 2007.

624

Before Judges SKILLMAN, YANNOTTI and LeWINN.

*Carl S. Bisgaier* argued the cause for appellant (*Flaster Green-berg*, attorneys; *Mr. Bisgaier* and *David R. Oberlander*, on the brief).

*Jeffrey R. Surenian* argued the cause for respondents (*Jeffrey R. Surenian* and Associates, attorneys; *Mr. Surenian*, of counsel and on the brief; *Michael A. Jedziniak*, on the brief).

A brief was submitted on behalf of amicus curiae Fair Share Housing Center (*Kevin D. Walsh*, on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The issue presented by this appeal is whether a *Mount Laurel* action brought by a developer is subject to dismissal if the defendant-municipality can establish that the developer did not attempt in good faith to obtain relief without litigation. We conclude that a developer's obligation to seek relief from the zoning applicable to its property without litigation is relevant only to the developer's entitlement to a builder's remedy. A developer does not have to make this showing in order to have standing to maintain a *Mount Laurel* action. Therefore, the trial court erred

in dismissing this action based on its finding that the plaintiff-developer had not attempted to obtain relief without litigation.

Plaintiff Oceanport Holding is the contract purchaser of a three-acre parcel of land in the Borough of Oceanport. The site has frontage on two waterways and is currently used for a marina. The site is located within a residential zone, where the minimum lot size is 120 by 100 feet, with a two-story maximum height. The surrounding neighborhood consists of residential properties that have been developed at a density of approximately 3.3 units per acre.

On February 11, 2005, plaintiff submitted a concept plan to Oceanport's governing body, which proposed construction of a six-story condominium structure that would contain sixty residences, 20% of which would be affordable to low and moderate income households. Plaintiff indicated that its proposed development project would require a change in zoning and inquired whether the governing body would entertain a request for such a change.

The governing body referred plaintiff's concept plan to the Oceanport Planning Board for review. The Board subsequently indicated that it would entertain a development application by plaintiff.

On March 14, 2005, plaintiff responded that its development project could proceed only if the site was rezoned and that it did not intend to submit any application in addition to the concept plan previously submitted to the governing body. Plaintiff also reiterated its request for rezoning of the site for "affordable housing purposes."

At a Board meeting held on April 13, 2005, plaintiff indicated that it would submit a formal site plan if its property were rezoned to allow the type of development outlined in its concept plan. At the conclusion of this meeting, the Board voted to recommend against rezoning plaintiff's property.

The governing body scheduled the Board's recommendation for discussion at a "workshop meeting" on May 16, 2005 and a formal

vote on May 19, 2005. However, the governing body subsequently deferred consideration of the Board's recommendation after its attorney recused himself due to a conflict of interest.

On May 26, 2005, plaintiff filed this action against Oceanport and its planning and zoning boards. Plaintiff's complaint challenged the constitutionality of Oceanport's zoning ordinance on the ground that it does not provide a realistic opportunity for creation of Oceanport's fair share of housing affordable to low and moderate income households, as required under the *Mount Laurel* cases [1] and the Fair Housing Act (FHA), *N.J.S.A.* 52:27D–301 to – 329, and its implementing regulations. The complaint sought a declaration of invalidity of Oceanport's zoning ordinance and a "builder's remedy" under which plaintiff would be allowed to proceed with its development project.

Plaintiff filed a motion for a partial summary judgment declaring Oceanport's zoning ordinance to be unconstitutional. The motion also sought a declaration of plaintiff's entitlement to a builder's remedy, unless defendants establish that plaintiff's proposed project is "clearly contrary to sound land use planning[.]" Defendant filed a cross-motion for summary judgment which sought, among other things, dismissal of plaintiff's complaint on the ground that plaintiff failed to negotiate in good faith for relief from the zoning applicable to its property before filing suit.

The trial court concluded in an oral opinion that plaintiff was required to show it had negotiated in good faith with Oceanport to obtain relief without litigation as a precondition to pursuing this action and that the undisputed facts established that plaintiff had failed to satisfy this requirement. Since the trial court concluded that plaintiff's failure to satisfy this obligation required dismissal of the complaint, the court did not consider plaintiff's motion for a

---

[1] *S. Burlington County N.A.A.C.P. v. Twp. of Mount Laurel,* 67 *N.J.* 151, 336 *A.2d* 713 ("*Mount Laurel I* "), *cert. denied and appeal dismissed,* 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.2d* 28 (1975), and *S. Burlington County N.A.A.C.P. v. Twp. of Mount Laurel,* 92 *N.J.* 158, 456 *A.2d* 390 (1983) ("*Mount Laurel II* ").

partial summary judgment declaring Oceanport's zoning ordinance to be unconstitutional.

The trial court's conclusion that plaintiff's action should be dismissed because plaintiff failed to engage in good faith negotiations for relief from the zoning applicable to its property before filing suit was derived primarily from the following statement in the Court's summary of rulings in *Mount Laurel II*:

> Builder's remedies will be afforded to plaintiffs in *Mount Laurel* litigation where appropriate, on a case-by-case basis. *Where the plaintiff has acted in good faith, attempted to obtain relief without litigation, and thereafter vindicates the constitutional obligation in Mount Laurel-type litigation, ordinarily a builder's remedy will be granted,* provided that the proposed project includes an appropriate portion of low and moderate income housing, and provided further that it is located and designed in accordance with sound zoning and planning concepts, including its environmental impact.[2]
>
> [92 *N.J.* at 218, 456 *A.2d* 390 (emphasis added).]

The *Mount Laurel II* opinion also contains a fuller two-and-a-half-page discussion of the builder's remedy, which states in pertinent part:

> Experience since [*Oakwood at Madison, Inc. v. Twp. of Madison*, 72 *N.J.* 481, 371 *A.2d* 1192 (1977)] ... has demonstrated to us that builder's remedies must be made more readily available to achieve compliance with *Mount Laurel.* We hold that where a developer succeeds in *Mount Laurel* litigation and proposes a project providing a substantial amount of lower income housing, a builder's remedy should be granted unless the municipality establishes that because of environmental or other substantial planning concerns, the plaintiff's proposed project is clearly contrary to sound land use planning....
>
> Other problems concerning builder's remedies require discussion. Care must be taken to make certain that *Mount Laurel* is not used as an unintended bargaining chip in a builder's negotiations with the municipality, and that the courts not be used as the enforcer for the builder's threat to bring *Mount Laurel* litigation if municipal approvals for projects containing no lower income housing are not

---

[2] This passage seems to indicate that a plaintiff-developer's obligation to "act[ ] in good faith" and "attempt[ ] to obtain relief without litigation" are separate preconditions of entitlement to a builder's remedy. However, these obligations are related in the sense that a developer's attempt to obtain relief without litigation must be made in good faith. Although a developer's obligation to act in good faith may also have other ramifications, there is no need to pursue this point in view of our conclusion that any consideration of plaintiff's entitlement to a builder's remedy was premature.

forthcoming. Proof of such threats shall be sufficient to defeat *Mount Laurel* litigation by that developer.

[*Id.* at 279–80, 336 *A.2d* 713 (footnote omitted).]

In 1985, the Legislature enacted the FHA, *L.* 1985, *c.* 222; *N.J.S.A.* 52:27D–301 to –329, which delegated responsibility to a newly created administrative agency, the Council on Affordable Housing (COAH), to determine municipal obligations for providing their fair share of affordable housing and the manner in which those obligations may be satisfied. *See generally Hills Dev. Co. v. Twp. of Bernards,* 103 *N.J.* 1, 19–23, 510 *A.2d* 621 (1986). One of the FHA's primary objectives was to replace builder's remedy lawsuits by developers with administrative procedures adopted by COAH to determine municipal affordable housing obligations. *See id.* at 34–36, 49, 510 *A.2d* 621. These administrative procedures include a municipality's right to petition COAH for substantive certification of a plan for satisfaction of its affordable housing obligation. *N.J.S.A.* 52:27D–313 to –314. Substantive certification insulates a municipality's affordable housing plan from challenge unless the plaintiff can show by "clear and convincing evidence" that the municipality's zoning fails to provide a realistic opportunity for creation of its fair share of affordable housing. *N.J.S.A.* 52:27D–317(a); *see Hills, supra,* 103 *N.J.* at 34–35, 510 *A.2d* 621.

Although the FHA expresses a legislative preference for an administrative rather than a judicial determination of a municipality's affordable housing obligation, the FHA does not require a municipality to petition COAH for substantive certification. *See id.* at 35, 510 *A.2d* 621. However, if a municipality fails to petition COAH in a timely manner, the municipality exposes itself to a developer's builder's remedy lawsuit without the benefit of the presumption of validity of its affordable housing plan provided by substantive certification. *See Toll Bros. v. Twp. of W. Windsor,* 173 *N.J.* 502, 563, 566–67, 803 *A.2d* 53 (2002); *Hills, supra,* 103 *N.J.* at 35–36, 510 *A.2d* 621.

Moreover, if a municipality fails to file a timely petition for substantive certification, a developer may pursue a *Mount Laurel* action without pursuing administrative remedies before COAH. This is made clear by *N.J.S.A.* 52:27D–309(b), which provides:

> A municipality which does not notify [COAH] of its [intent to submit a petition for substantive certification] within four months may do so at any time thereafter. In any exclusionary zoning litigation instituted against such a municipality, however, there shall be no exhaustion of administrative remedy requirements pursuant to section 16 of this act unless the municipality also files its fair share plan and housing element with [COAH] prior to the institution of the litigation.

In *Toll Brothers, supra,* 173 *N.J.* at 559–67, 803 *A.*2d 53, the Court reaffirmed the availability to a developer that succeeds in *Mount Laurel* litigation of a builder's remedy under the standards set forth in *Mount Laurel II.* The defendant-municipality in *Toll Brothers* argued that the plaintiff-developer was not entitled to a builder's remedy because it had acted in bad faith by failing to seek the municipality's approval for its development project before filing suit. *Id.* at 559, 803 *A.*2d 53. In rejecting this argument, the Court stated:

> The courts below properly held that Toll Brothers satisfied the *Mount Laurel II* requirements for the grant of a builder's remedy. West Windsor has not established that Toll Brothers acted in bad faith. Both prior to commencing litigation and throughout the summer and fall of 1993, Toll Brothers communicated with the Planning Board, cautioning that zoning ordinances would have to be amended to implement its project and expressing its willingness to settle. Under the zoning in place at the time, Toll Brothers' plan necessarily would require variances. As the Appellate Division observed, the Toll Brothers site was not a good candidate for variances because of the "size of the property, its importance in the Township's compliance plan and the number of variances needed to build conventional single-family dwellings . . . ." In those circumstances, it cannot be said that Toll Brothers acted in bad faith by not applying to the Planning Board.
>
> [*Id.* at 560, 803 *A.*2d 53.]

On this appeal, plaintiff argues that the requirement set forth in the Court's summary of rulings in *Mount Laurel II* that a developer show, as a precondition to entitlement to a builder's remedy, that it attempted to obtain relief from the zoning applicable to its property without litigation, should no longer apply in light of the FHA's enactment. Oceanport argues that this requirement still applies despite enactment of the FHA and that the

undisputed evidence presented on its motion for summary judgment established that plaintiff failed to satisfy this requirement.

We conclude that the requirement set forth in *Mount Laurel II* that a plaintiff-developer must attempt to obtain relief without litigation is relevant only to a developer's entitlement to a builder's remedy. A developer does not have to make this showing to have standing to maintain a *Mount Laurel* action. Consequently, the trial court's finding that plaintiff failed to negotiate in good faith to obtain relief without litigation was premature. Instead, the court should have proceeded to a determination of whether Oceanport's zoning complies with its *Mount Laurel* obligations, while deferring consideration of any legal or factual issues relevant to plaintiff's entitlement to a builder's remedy, including whether the requirements for such relief have been modified by the FHA, to the remedies stage of the litigation.

A court ordinarily will not consider the remedies to which a party may be entitled until that party has established its cause of action. In a *Mount Laurel* case, the cause of action is the alleged unconstitutionality of the defendant-municipality's zoning because of its failure to provide for the municipality's fair share of affordable housing. *See Mount Laurel II, supra,* 92 *N.J.* at 214–16, 456 *A.*2d 390. If a plaintiff establishes this cause of action, the trial court then proceeds to the remedies stage of the case. *Id.* at 278, 456 *A.*2d 390. At this stage, the trial court "order[s] the municipality to revise its zoning ordinance within a set time period to comply with the constitutional mandate; [and] if the municipality fails adequately to revise its ordinance within that time, the court . . . implement[s] the remedies for noncompliance[.]" *Ibid.* In addition, if plaintiff is a developer, the court must determine "whether a builder's remedy should be granted." *Ibid.*

Under this procedural framework for adjudication of *Mount Laurel* actions, it is clear that a developer-plaintiff must establish that the defendant-municipality's zoning fails to comply with its *Mount Laurel* obligations before the trial court will consider the

other preconditions for award of a builder's remedy. *See id.* at 279–80, 456 *A.*2d 390 ("*[W]here a developer succeeds in Mount Laurel litigation* and proposes a project providing a substantial amount of lower income housing, a builder's remedy should be granted unless the municipality establishes that because of environmental or other substantial planning concerns, the plaintiff's proposed project is clearly contrary to sound land use planning.") (emphasis added); *id.* at 315, 456 *A.*2d 390 ("One of the conditions for awarding [a builder's] remedy is that the builder establish that the municipal ordinance fails to comply with the *Mount Laurel* obligation."); *id.* at 326, 456 *A.*2d 390 ("If . . . the trial court had granted on *Mount Laurel* grounds a builder's remedy only, without invalidating the ordinance, . . . such action would be improper."). Therefore, the trial court acted prematurely in considering whether plaintiff had satisfied one of the preconditions for the award of a builder's remedy at the outset of the action, before deciding whether plaintiff had established that Oceanport's zoning ordinance fails to comply with its *Mount Laurel* obligations.

In dismissing plaintiff's complaint on the ground it had failed to negotiate in good faith to obtain relief from the zoning applicable to its property without litigation, the trial court effectively converted this precondition for entitlement to a builder's remedy into a precondition for maintenance of a *Mount Laurel* action. However, the right to maintain an action is a standing not a remedies issue, *see Anderson v. Sills,* 56 *N.J.* 210, 220–21, 265 *A.*2d 678 (1970), and the New Jersey courts have traditionally taken a liberal approach to issues of standing, *see Crescent Park Tenants Assoc. v. Realty Equities Corp.,* 58 *N.J.* 98, 107–12, 275 *A.*2d 433 (1971). Moreover, the Court indicated in *Mount Laurel II* that "the need for a 'liberal approach' to standing is especially important in *Mount Laurel* litigation." 92 *N.J.* at 337, 456 *A.*2d 390.

Under this liberal approach, a plaintiff-developer has standing "to pursue an action simply to vindicate the *Mount Laurel* right without seeking a builder's remedy." *Id.* at 327, 456

*A.2d* 390. Similarly, a developer who seeks a builder's remedy but is unable to satisfy one of the preconditions for such relief has standing to continue a *Mount Laurel* action. *See id.* at 316, 321, 456 *A.2d* 390. Therefore, there is no basis for requiring a plaintiff-developer to show that it has satisfied a precondition for obtaining a builder's remedy in order to pursue a *Mount Laurel* action.

This conclusion is not undermined by the Court's statement that proof of a developer's "threat to bring *Mount Laurel* litigation if municipal approvals for projects containing no lower income housing are not forthcoming ... shall be sufficient to defeat *Mount Laurel* litigation by that developer." *Id.* at 280, 456 *A.2d* 390. This statement was part of the Court's discussion of "problems concerning builder's remedies[.]" *Ibid.* Consequently, it should be construed to mean that such threats may result in the denial of a builder's remedy, not the dismissal of the action. In any event, plaintiff did not seek municipal approval of a project "containing no lower income housing." Plaintiff's concept plan stated that 20% of its proposed sixty residential units would be affordable to lower income households.

Our conclusion that a trial court should not consider a plaintiff-developer's satisfaction of the preconditions for entitlement to a builder's remedy until the remedies stage of a *Mount Laurel* action is also supported by practical considerations. As this case illustrates, the determination whether a plaintiff-developer has satisfied the preconditions for award of a builder's remedy may present complex legal and factual issues. However, the essential objective of the procedures set forth in *Mount Laurel II* was to simplify and expedite the trial of *Mount Laurel* actions. *See id.* at 214, 290–91, 456 *A.2d* 390. The achievement of this objective would be undermined if a defendant-municipality were allowed to obtain an advance adjudication of a developer's entitlement to a builder's remedy before adjudication of the central issue in a *Mount Laurel* case, which is the constitutionality of the municipality's zoning.

Moreover, the determination whether a plaintiff-developer has satisfied those preconditions would be unnecessary if the developer fails to establish the unconstitutionality of the municipality's zoning because a developer must succeed in a *Mount Laurel* action to be entitled to a builder's remedy. *Id.* at 279–80, 315, 456 A.2d 390. In addition, if a trial court determined that a plaintiff-developer was not entitled to a builder's remedy before adjudicating the constitutionality of the municipality's zoning, the developer would be likely to dismiss the action because it no longer would have a sufficient financial incentive to pursue its claim. Therefore, a premature adjudication of a plaintiff-developer's entitlement to a builder's remedy would undermine the Court's policy of encouraging *Mount Laurel* actions by developers to promote compliance by municipalities with the obligation to provide their fair share of affordable housing. *See id.* at 279–80, 456 A.2d 390.

We note that a defendant-municipality and a plaintiff-developer may have complementary strategic reasons for seeking an adjudication of the developer's entitlement to a builder's remedy at the beginning of a *Mount Laurel* action. The municipality has an obvious interest in obtaining a dismissal of the action without an adjudication of the constitutionality of its zoning ordinance, and the developer has an interest in ascertaining whether it has a realistic opportunity of being awarded a builder's remedy if it invests the resources required to establish a claim that the municipality's zoning is unconstitutional. However, the objective of the procedural framework for adjudication of *Mount Laurel* actions established in *Mount Laurel II* was to reduce strategic maneuvering by litigants designed or likely to have the effect of delaying the determination whether a defendant-municipality has satisfied the obligation to provide its fair share of affordable housing. *See id.* at 198–200, 214, 290–91, 456 A.2d 390.

For these reasons, we conclude that the determination whether a developer has "attempted to obtain relief without litigation" is relevant only to its entitlement to a builder's remedy, which is a determination that should be made only after the developer has

succeeded in establishing that the municipality's zoning does not comply with its *Mount Laurel* obligations. Therefore, a developer's alleged failure to attempt to obtain relief without litigation is not a basis for dismissal of a *Mount Laurel* action.

Accordingly, the order dismissing plaintiff's complaint is reversed, and the case is remanded to the trial court. On remand, plaintiff may renew its motion for partial summary judgment.