NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5822-12T2

CRANFORD DEVELOPMENT ASSOCIATES,
LLC, SAMUEL HEKEMIAN, PETER HEKEMIAN,
JEFFREY HEKEMIAN, and ANN KRIKORIAN
as trustee for RICHARD HEKEMIAN and
MARK HEKEMIAN,

> Plaintiffs-Respondents/
> Cross-Appellants,

v.

TOWNSHIP OF CRANFORD, MAYOR and
COUNCIL OF THE TOWNSHIP OF CRANFORD,
and THE PLANNING BOARD OF THE
TOWNSHIP OF CRANFORD,

> Defendants-Appellants/
> Cross-Respondents.

---

| |
|---|
| APPROVED FOR PUBLICATION |
| April 26, 2016 |
| APPELLATE DIVISION |

Argued December 1, 2015 — Decided April 26, 2016

Before Judges Reisner, Leone and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3759-08.

Jeffrey R. Surenian argued the cause for appellants/cross-respondents (Jeffrey R. Surenian and Associates, attorneys; Mr. Surenian, of counsel; Mr. Surenian and Michael A. Jedziniak, on the brief).

Stephen Eisdorfer argued the cause for respondents/cross-appellants (Hill Wallack, attorneys; Mr. Eisdorfer and Cameron MacLeod, on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

In this affordable housing litigation, defendants Township of Cranford and the Cranford Mayor, Council and Planning Board (collectively the Township) appeal from a final order dated July 17, 2013, and from a series of interlocutory orders, granting a builder's remedy to plaintiff Cranford Development Associates, LLC for the construction of a 360-unit residential development in Cranford. Plaintiffs cross-appeal from an order denying their application for counsel fees. We affirm.

I

Judge Lisa F. Chrystal issued a series of lengthy, comprehensive and correct opinions over the course of the litigation, and we need not repeat her reasoning here. Nor for purposes of this opinion is it necessary to reiterate evidence set forth in detail in the judge's opinions. We will briefly summarize the litigation, and will discuss additional pertinent facts when we address the issues on appeal.

By way of background, plaintiffs Cranford Development Associates and its members, Samuel Hekemian, Peter Hekemian, Jeffrey Hekemian, and Ann Krikorian as trustee for Richard Hekemian and Mark Hekemian (collectively CDA) filed suit against the Township, alleging that Cranford had failed to provide its

fair share of low-to-moderate-income housing (affordable housing), and that its current zoning prohibited the construction of affordable housing. CDA requested a builder's remedy to redevelop its roughly sixteen-acre commercial property, located on Birchwood Avenue, with two buildings that would provide 419 apartments, fifteen percent of which would be designated as affordable housing.

In an early phase of the litigation, Judge Chrystal determined, in an order dated March 20, 2009, that the Township had failed to comply with its fair share housing obligations under the Mount Laurel[1] doctrine. In her accompanying written opinion, Judge Chrystal found that "Cranford still has an unmet housing obligation of 410 housing units," and the Township's fair share housing plan, filed after the lawsuit was instituted, was seriously deficient.

Following a fourteen-day bench trial held in 2010, Judge Chrystal issued a 106-page oral opinion addressing CDA's entitlement to a builder's remedy. Based on her evaluation of the expert testimony she found credible, and extensive recommendations from a court-appointed Special Master, the judge

---

[1] S. Burlington Cty. NAACP v. Mount Laurel Twp., 92 N.J. 158, 198-99 (1983) (Mount Laurel II); S. Burlington Cty. NAACP v. Mount Laurel Twp., 67 N.J. 151, cert. denied, 423 U.S. 808, 96 S. Ct. 18, 46 L. Ed. 2d 28 (1975) (Mount Laurel I).

granted a builder's remedy for the construction of 360 apartments, as opposed to the 419 units CDA originally sought. She conditioned construction on CDA's obtaining all necessary permits from the New Jersey Department of Environmental Protection (DEP).[2] The judge appointed a special hearing examiner to oversee final site plan approval.[3] After a five-day hearing, the hearing examiner recommended that the court grant final site plan approval, and Judge Chrystal accepted that recommendation.

On this appeal, the Township does not challenge the trial court's 2009 determination that it failed to comply with its fair share obligations under Mount Laurel. Rather, the Township contends that the court erred in granting the builder's remedy because: (1) CDA failed to negotiate in good faith with the Township prior to filing suit; (2) CDA was not a "catalyst for change" in moving the Township toward Mount Laurel compliance;

---

[2] The DEP eventually granted the permits. The DEP's decision is the subject of a separate appeal, Cranford Development Associates, LLC, c/o The S. Hekemian Group Flood Hazard Area Control Act Individual Permit No. 2003-08-0006.1 FHA 110001; Flood Hazard Area Permit Verification No. 2003-08-0006.1 FHA 110002; and Freshwater Wetlands Transition Area Averaging Plan No. 2003-08-0006.1 FWW 110001, Challenged by Township of Cranford, No. A-2157-14 (App. Div. Apr. 26, 2016).

[3] As noted later in this opinion, in addition to her other responsibilities in the builder's remedy litigation, the Special Master was assigned to assist the special hearing examiner in the site plan hearing.

and (3) the Township proved that CDA's property was not suitable for the proposed 419-unit development and, according to the Township, the court could not approve the project with a reduced number of units. The Township does not challenge the merits of the final site plan approval. Instead, it argues that the court erred in appointing a special hearing examiner to oversee the site plan hearings. The Township also contends that CDA's hearing notice was deficient and the hearings should have been held in Cranford rather than in the county courthouse in Elizabeth.

In a cross-appeal, CDA contends that the trial court erred in denying its request for counsel fees and costs under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2.

We must defer to the trial court's factual findings so long as they are supported by sufficient credible evidence, and we owe particular deference to the judge's evaluation of witness credibility. See Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002); Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011). We review the court's legal interpretations de novo. Toll Bros., supra, 173 N.J. at 549. After reviewing the voluminous record in light of the applicable law, we find no merit in either the appeal or the cross-appeal, and we affirm the trial court's challenged orders in all respects.

We begin by addressing the Township's appeal. Cranford's first argument, concerning CDA's alleged failure to engage in good faith negotiations, is without merit. We affirm for the reasons stated in Judge Chrystal's written opinion dated June 23, 2010, and her oral opinion issued July 29, 2011, and for the additional reasons stated below.

A builder in CDA's situation is required to engage in good faith negotiations before filing a Mount Laurel lawsuit. See Mount Laurel II, supra, 92 N.J. at 218; Oceanport Holding, L.L.C. v. Borough of Oceanport, 396 N.J. Super. 622, 627 (App. Div. 2007).[4] Cranford argues that CDA's efforts were insufficient and CDA should have waited longer, and made greater efforts to negotiate before filing suit. In another case, we might agree that a six-to-eight-week negotiation process was insufficient. However, in this case it was clear from its responses, or non-responses, to CDA's overtures that the Township had no interest in negotiating with CDA.

---

[4] A developer has standing to file a Mount Laurel suit challenging the constitutionality of the local zoning without first proving that it engaged in good faith negotiations. Oceanport, supra, 396 N.J. Super. at 630. However, once a plaintiff-developer succeeds in obtaining a ruling that the ordinance is unconstitutional, it still may not qualify for a builder's remedy unless it can prove it engaged in good faith negotiations before filing the lawsuit. Id. at 630-33.

In deciding both CDA's summary judgment motion and the Township's request for reconsideration after trial, Judge Chrystal rejected the Township's claim that CDA filed suit prior to attempting good faith negotiations. Judge Chrystal found that, before filing suit, CDA had appeared at three meetings of the municipal governing body (the Committee) and had requested that the Committee include CDA's proposed development in the Township's fair housing plan. Despite prior notice, the Committee did not place the proposal on the agenda for any of the meetings, did not meet with CDA to discuss the proposal, and refused to share any of its professionals' reports on the proposal.

Judge Chrystal found that CDA did not threaten to file a lawsuit and continually invited discussion, even though the Committee showed no interest in considering its proposal. The judge found that, instead of negotiating with CDA, the Committee instructed CDA to submit its proposal to the Planning Board, although the Board had no jurisdiction to address whether Cranford violated the Mount Laurel doctrine and could only make a recommendation to the Township regarding a rezoning application. Moreover, as the judge observed, "under Mount Laurel II, 92 N.J. 158, 342 n.73 (1983), municipalities cannot

in the guise of good faith negotiations require that a builder plaintiff exhaust any local administrative remedy."

In this case, we find no basis to second-guess Judge Chrystal's finding that CDA satisfied its obligation of good faith negotiation before filing its lawsuit. As Judge Chrystal acknowledged in her opinion: "'The court would be short on realism . . . were it not to note that it takes at least two to negotiate and the record should be reviewed with that in mind.'" (quoting Cty. of Monmouth v. Whispering Woods at Bamm Hollow, Inc., 222 N.J. Super. 1, 9 (App. Div. 1987), certif. denied, 110 N.J. 175 (1988)). Whether the Township's unresponsivenesss was due to concerns over flooding or because the Township believed that its fair share obligation was much more limited than the court eventually concluded that it was, the record supports Judge Chrystal's finding that the Township was unwilling to negotiate for the siting of an affordable housing project on the CDA site.

Moreover, the negotiation process in this case cannot be viewed without considering the historic context. Ironically, the Township's appellate brief illustrates that history. Cranford admits that "after engaging in years of pre-suit negotiations with the Township," another builder, Lehigh Acquisition Corp. (Lehigh), finally filed a Mount Laurel

builder's remedy lawsuit against the Township in January 2008. The Township further admits that "[i]n the wake of the <u>Lehigh Action</u>, Cranford drafted a comprehensive Affordable Housing Plan." However, the plan was not actually submitted to the Counsel on Affordable Housing (COAH) until after CDA filed its lawsuit in November 2008, and the plan did not include the CDA site.[5]

Moreover, CDA's predecessor in title, Woodmont Properties, had conducted negotiations with the Township for approval of a much more modest affordable housing development in the same location where CDA later proposed its project (the CDA site). Woodmont's efforts, which included an application to the Planning Board (Board) to recommend a rezoning of the property, proved fruitless. The Board rejected the rezoning plan despite a favorable recommendation from its own consulting planner. Clearly, the Township had no intention of ever allowing affordable housing to be constructed on the CDA site.

On the particular facts of this case, we agree with Judge Chrystal that CDA's efforts to negotiate were made in good faith and were sufficient. Our Supreme Court has warned developers against using litigation threats as a bargaining chip in their

---

[5] The Lehigh and CDA lawsuits were consolidated, and the Township later reached a settlement with Lehigh.

affordable housing applications.  Mount Laurel II, supra, 92 N.J. at 280.  However, the Township admits that CDA did not threaten it with litigation.  The fact that CDA was privately preparing to litigate if, as seemed highly likely, the Township was unreceptive to its proposal, does not mean CDA acted in bad faith.

For the reasons stated in her opinion, Judge Chrystal properly rejected the Township's claim that CDA failed to exhaust administrative remedies by making a rezoning application to the Board.  Faced with a similar argument, the Supreme Court has held that "[t]here is no such [administrative exhaustion] requirement in Mount Laurel litigation."  Id. at 342 n.73.  Moreover, it is clear on this record that an application to the Planning Board for a rezoning recommendation would have been futile.  See Toll Bros., supra, 173 N.J. at 560.  The Board had already rejected a more modest rezoning application filed by Woodmont.[6]

---

[6] A municipal governing body is ordinarily required to refer a proposed zoning change to the local planning board for its input before adoption of the ordinance.  See N.J.S.A. 40:55D-26, -64. However, such a referral has a strict time deadline; the board has thirty-five days to report back to the governing body after which the governing body may act.  N.J.S.A. 40:55D-26(a).  In this case, there is no evidence that the Township was actually contemplating adopting a revised zoning ordinance, nor did the Township make the referral pursuant to N.J.S.A. 40:55D-26, -64. Rather, invoking its local ordinance, the Township directed CDA
(continued)

The Township's arguments on this point are without sufficient merit to require further discussion. R. 2:11-3(e)(1)(E).

III

We reject Cranford's next argument, contending that CDA was not entitled to a builder's remedy because the Township would have filed a new fair share housing plan even without the CDA lawsuit. As CDA proved in the trial court, at the time CDA filed its lawsuit, the Township was out of compliance with its Mount Laurel obligations. Moreover, even though the Township filed a revised fair share plan with COAH shortly after the lawsuit was instituted, Special Master Elizabeth McKenzie's report noted that the plan was deficient in important respects. McKenzie opined that, even if implemented, the plan would not have satisfied the Township's fair share requirements. In her 2009 opinion, Judge Chrystal credited McKenzie's opinion.

Consequently, in this case, the Township's "catalyst" argument is a red herring, because the Township did not in fact bring itself into compliance before or during the litigation. Rather, at the end of the litigation, the Township complied with a court order and adopted a revised zoning ordinance under

---

(continued)
to make a separate application to the board which, as CDA cogently argues, was a "trip to nowhere."

A-5822-12T2

protest. However, even if we consider this argument, it is meritless.

We cannot agree with the Township's argument that, in addition to winning the underlying exclusionary zoning lawsuit, a Mount Laurel plaintiff must also prove that it was a "catalyst" for change, in order to qualify for a builder's remedy. The catalyst language is drawn from this quote from Toll Brothers:

> We find that Toll Brothers succeeded at trial. West Windsor's claim that it was already compliant and had instituted amendments to its fair share plan at the time Toll Brothers initiated its lawsuit ignores the critical point - it was Toll Brothers that served as the catalyst for change and that successfully demonstrated West Windsor's non-compliance with its constitutional obligation.
>
> [Toll Bros., supra, 173 N.J. at 560.]

As the quote illustrates, a developer may be entitled to a builder's remedy, even if a municipality has begun moving toward compliance before or during the developer's lawsuit, provided the lawsuit demonstrates the municipality's current failure to comply with its affordable housing obligations. Ibid. The quoted language does not mean that a developer must prove, as a separate element of its case, that the litigation was a catalyst where, as here and as in Toll Brothers, the lawsuit was filed before the municipality filed a revised fair share plan with

COAH, and the developer proved in the lawsuit that the municipality was currently not in compliance with its fair share obligations. See id. at 566-67. In that context, filing the lawsuit and proving that the existing municipal zoning ordinance is unconstitutional is the catalyst for change. See Mount Laurel II, supra, 92 N.J. at 218.

The Township's reliance on Mount Olive Complex v. Mount Olive Township, 356 N.J. Super. 500 (App. Div.), certif. denied, 176 N.J. 73 (2003), is misplaced. In that case, Mount Olive Complex (the plaintiff) was not a party to the original Mount Laurel lawsuit, which was settled. Id. at 506. However, as part of that settlement, the municipality agreed to let the plaintiff build forty units of affordable housing as part of a 400-unit planned unit development (PUD) that the plaintiff was already planning to construct. Id. at 507.

Subsequently, COAH decreased the municipality's fair share number, and the plaintiff's forty-unit approval was rescinded after the approvals for the still-unconstructed PUD expired. Id. at 507-08. Several years later, the municipality changed its zoning and also amended its fair share plan. Id. at 508-09. Nine months after the township accomplished those changes, the plaintiff filed a Mount Laurel suit demanding a builder's remedy. Id. at 509.

The trial court found the plaintiff failed to prove that, at the time it filed its lawsuit, the town was non-compliant with its fair housing obligations.  Id. at 510.  Hence, the plaintiff failed to satisfy the first prerequisite for a builder's remedy — success on the merits of its fair housing challenge.  Ibid.  While our opinion affirming the trial court used the phrase "catalyst for change," in context that language was synonymous with success at trial resulting in a court-ordered zoning change to comply with Mount Laurel.  Id. at 511.  That is precisely what CDA achieved here and what the plaintiff in Mount Olive failed to achieve.

The Township's additional arguments on this point are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

IV

Next, we find no abuse of the trial court's discretion in appointing a special hearing examiner to oversee final site plan approval.  The Township had already agreed to exactly the same process in the Lehigh settlement, and the record reflects no objection to the court's order appointing the hearing examiner in this case.  In fact, after the court entered the December 9, 2011 order making the appointment as well as memorializing the builder's remedy, the Township filed a motion for

reconsideration of the builder's remedy based on flooding caused by Hurricane Irene. However, the Township did not ask the court to reconsider the appointment of the hearing examiner. The transcript of the oral argument on the reconsideration motion does not contain a word of objection to the appointment. We ordinarily will not consider an issue not raised before the trial court. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). However, even if we entertain the claim, it is without merit.

The court's authority to appoint Special Masters in Mount Laurel cases is well established. See Mount Laurel II, supra, 92 N.J. at 282-85. Given the Township's record of obstructing affordable housing projects, and the Planning Board's past hostility to a much more limited affordable housing plan, the court's decision to appoint the hearing examiner was justified in this case. The motion practice which occurred after the appointment further confirmed the wisdom of the court's action. In addition to opposing the Township's reconsideration motion, CDA filed a cross-motion to have the hearing examiner, instead of the Township, review soil removal permits because the Township had unreasonably delayed the permit approvals. In fact, it appeared undisputed that Township officials had publicly stated that they would not issue the approvals and would issue a

stop work order instead. Consequently, the judge gave the hearing examiner authority to hear any soil permit application that the Township unduly delayed. As the judge noted, the CDA project would face various municipal regulatory "hurdles" and the hearing examiner's participation would likely be needed to resolve them.[7]

We recognize that a "trial court (and the master, if one is appointed) should make sure that the municipal planning board is closely involved in the formulation of the builder's remedy[,]" and "should make as much use as they can of the planning board's expertise and experience so that the proposed project is suitable for the municipality." Id. at 280. However, the Court also added the "caveat" that "[t]his does not mean that the planning board should be permitted to delay or hinder the project[.]" Ibid.

Contrary to the Township's argument, the Planning Board was not excluded from the proceedings before the hearing examiner. The Board had the opportunity to participate in the hearings. In fact, the Special Master, who was assisting the hearing

---

[7] Other events confirmed the trial court's wisdom in putting an oversight mechanism in place due to local hostility to the project. In connection with the soil removal, the Township filed four municipal court complaints against CDA; the Township later dismissed the complaints on the day of trial.

examiner, sent an initial procedural memo to all parties instructing that five copies of the applicant's plans and all supporting documents must be provided to the Board. Finally, while objecting to the process, the Township does not cite any alleged substantive errors in the terms of the final site plan approval.

The Township's arguments concerning the adequacy of the hearing notice and the location of the hearings were appropriately addressed by the hearing examiner and the trial judge, and they are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

V

We likewise find no merit in the Township's challenge to the terms of the builder's remedy the trial court awarded. The Township contends that because the trial court awarded 360 units instead of 419 units, the court must have accepted its argument that the site was unsuitable for CDA's residential development project. See Mount Laurel II, supra, 92 N.J. at 279-80 (a builder's remedy should be granted to a successful developer-plaintiff, unless the municipality proves that the project is clearly unsuitable for the site based on environmental or other substantial planning reasons). We disagree.

The Township's argument concerning site suitability is based on a distortion of the Special Master's recommendations and the trial court's decision. Neither the Special Master nor the trial court found that the site was unsuitable for the project. In fact, even in her post-trial supplemental report the Special Master reiterated her conclusion that the site could be appropriate for a 419-unit development. However, based on planning considerations, such as a perceived need to set the apartment buildings further back from the street, lowering the height of one of the buildings, ensuring adequate parking, and the like, she recommended changes that would result in the construction of fewer units. None of her proposed changes were based on a finding that the site was environmentally inappropriate for the proposed multi-unit development.

Much of the fourteen-day bench trial was devoted to hearing expert testimony on the feasibility of constructing such a relatively large housing development in an area that was subject to periodic flooding. While acknowledging the property's environmental constraints, the Special Master concluded that the proposed development was likely to decrease rather than exacerbate flooding in the area. In particular, the project would involve razing a large building that was sitting directly in the floodway, thereby improving drainage. The project would

18                                                    A-5822-12T2

also reduce the percentage of impervious cover on the entire property, and would increase the extent to which the property could safely retain some flood water. Those measures could protect the rest of the neighborhood against flooding.

The judge, who credited CDA's expert witnesses on those points, agreed with the Special Master. Like the Special Master, Judge Chrystal found that CDA understood the water-related issues the property presented and had a "creative" plan to address them. She noted that CDA intended to regrade the property and add ten percent of flood storage to that which currently existed, in addition to constructing an access driveway outside the flood hazard area. The judge observed that CDA's plan "may actually improve flood water storage in the area [beyond CDA's property] in a way that is not currently possible and that has not heretofore been addressed by Cranford." The judge wrote:

> A strong argument has been advanced that this plan actually improves flood control in Cranford. It removes the existing buildings at 215 Birchwood Avenue from the floodway, thus keeping flood waters closer to the channel of the stream. It increases the flood storage capacity of the site, thus lowering the peak flood levels in the homes downstream.
>
> Given that no recent upgrades to flood control in Cranford were presented from the point of view of flood control, the court notes that this project potentially has the

A-5822-12T2

promise to improve Cranford's overall ongoing flood problems.

The judge noted that the Township had challenged CDA's ability to develop the site but had presented no proof that the project could not be built while complying with DEP regulations. In fact, the Township's engineering expert, Richard Marsden, conceded that if CDA was willing to absorb the cost, the water issues on the site could be addressed and the development could be constructed. Based on the extensive record presented at the bench trial, Judge Chrystal concluded that plaintiff would likely be able to satisfy any DEP requirements regarding flood hazard areas and storm water management. However, the judge acknowledged that, ultimately, DEP would decide whether to issue flood hazard area, storm water management, and other environmental permits for the construction.

Contrary to the Township's argument, the trial court clearly did not find that the proposed project was environmentally unsuitable. Further, we cannot agree with the Township's proposed "all or nothing" approach to the builder's remedy. In essence, the Township argues that the court either had to permit 419 units as the builder's remedy or reject the builder's remedy altogether, sending CDA back to the proverbial drawing board. That approach would encourage repetitive litigation, contrary to the policy expressed in <u>Mount Laurel II</u>,

that builder's remedy lawsuits should be streamlined as much as possible so as to produce results (i.e., constructed affordable housing) rather than more litigation.  92 N.J. at 290-91; see also Toll Bros., supra, 173 N.J. at 561-63.  Allowing the court to revise a builder's proposed project, so long as the development is suitable for the site, serves the fundamental purpose of Mount Laurel to produce affordable housing.[8]  See Mount Laurel II, supra, 92 N.J. at 326-28 (holding that the sale of a portion of the developer's property during the litigation, requiring a revised building plan, did not moot the litigation or bar a builder's remedy).

The Township's position is also contrary to the Supreme Court's direction that, "in the formulation of the builder's remedy[,]" the trial court, and any appointed Special Master, "should make as much use as they can of the planning board's expertise and experience so that the proposed project is suitable for the municipality."  Mount Laurel II, supra, 92 N.J. at 280.  We find it implicit in that language that a trial court has authority to mold the builder's remedy by reducing the

_____

[8] We need not address here the extreme situation posited by the Township, where a developer proposes a project of clearly inappropriate magnitude, which a municipality rejects when it might otherwise have approved a more modest project. As previously noted, in this case the Township was not going to voluntarily accept any affordable housing project on this site.

number of units allowed, based on appropriate planning considerations, whether suggested by a planning board or a court-appointed special master. That is precisely what the trial court did here. See Toll Bros., supra, 173 N.J. at 510 (noting that the trial court, whose decision was affirmed, left for a later phase of the trial the "specifics" of the builder's remedy); see also id. at 574 (describing the grant of a builder's remedy as a "dynamic" and "flexible proceeding").

VI

Addressing the cross-appeal we find no merit in CDA's argument that the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-2, authorized a fee award in this case. The CRA, which was enacted in 2004, L. 2004, c. 143, § 2, provides in relevant part:

> c. Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with . . . may bring a civil action for damages and for injunctive or other appropriate relief. . . .
>
> . . . .
>
> f. In addition to any damages, civil penalty, injunction or other appropriate relief awarded in an action brought pursuant

to subsection c. of this section, the court may award the prevailing party reasonable attorney's fees and costs.

[N.J.S.A. 10:6-2(c), (f).]

The CRA was intended to protect against deprivations of substantive constitutional rights, and substantive statutory rights. Tumpson v. Farina, 218 N.J. 450, 473 (2014).

> [T]he Legislature adopted the CRA for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights and to fill any gaps in state statutory anti-discrimination protection. See L. 2004, c. 143; see also S. Judiciary Comm., Statement to Assemb. Bill No. 2073, at 1 (May 6, 2004) (stating that "to protect and assure against deprivation of the free exercise of civil rights which are guaranteed and secured under the New Jersey Constitution and federal Constitution, this bill provides a remedy when one person interferes with the civil rights of another . . . . [and further] is intended to address potential gaps which may exist under [the New Jersey Law Against Discrimination (LAD) and bias crime statutory causes of action]").
>
> [Owens v. Feigin, 194 N.J. 607, 611 (2008) (alterations in original).]

However, as the Court recently held, "[t]o establish a violation of the Civil Rights Act in this case, plaintiffs must prove that (1) 'the Constitution or laws of this State' conferred on them a substantive right." Tumpson, supra, 218 N.J. at 473 (emphasis added). CDA did not meet that criterion. The substantive constitutional right at issue in this case

belongs not to the developer but to "lower income citizens" seeking to live in affordable housing. Mount Laurel II, supra, 92 N.J. at 220. As the Court previously noted, "the builder's remedy was developed not for the benefit of builders but to advance the constitutional interest in affordable housing." Toll Bros., supra, 173 N.J. at 580 (citing Hills Development Co. v. Bernards Township, 103 N.J. 1, 54 (1986)). In this situation, the developer has not been "deprived" of a constitutional right, within the meaning of the CRA, because no such right has been "conferred" on it. See N.J.S.A. 10:6-2(c); Tumpson, supra, 218 N.J. at 473. Therefore we cannot conclude that a developer that prevails in Mount Laurel litigation is entitled to fees under the CRA.

This result is not inconsistent with the purpose of the Legislature in enacting the fee section of the CRA. The CRA "was intended to apply to cases . . . where a citizen deprived of a substantive right, could not otherwise afford to retain counsel." Tumpson, supra, 218 N.J. at 480. Unlike other constitutional litigation in which counsel fees are needed to make the litigation financially feasible for wronged plaintiffs, in Mount Laurel litigation the possibility of a builder's remedy provides developers with ample financial incentive to file suit.

Moreover, if the Legislature intended to permit counsel fee awards in builder's remedy lawsuits, we anticipate that it would have provided that remedy in the Fair Housing Act (FHA), which specifically addressed the implementation of Mount Laurel.[9] But it did not do so. By contrast, for example, the Legislature authorized fees to a prevailing plaintiff in suits under the Law Against Discrimination, which bars discrimination in housing. N.J.S.A. 10:5-12(g), -27.1.

To the extent we can glean the Legislature's intent from the FHA, it favored mediation and the COAH process, rather than the filing of lawsuits:

> When enacting the FHA, the Legislature provided "various alternatives to the use of the builder's remedy as a method of achieving fair share housing," including the COAH mediation and review process, which was "the State's preference for the resolution of existing and future disputes involving exclusionary zoning. . . ." N.J.S.A. 52:27D-303.
>
> [Toll Bros., supra, 173 N.J. at 563.]

The FHA was enacted in 1985. L. 1985, c. 222. We find it highly unlikely that the Legislature, in later enacting the CRA,

---

[9] The possibility of a court-created fee shifting rule in Mount Laurel litigation was mentioned in Toll Brothers. However, the Court did not adopt that approach in its opinion. 173 N.J. at 566 (majority), 580-81 (Stein, J., concurring in part and dissenting in part).

had changed its view toward <u>Mount Laurel</u> litigation and intended to provide additional incentives for developer lawsuits. <u>See</u> <u>Hills Development</u>, <u>supra</u>, 103 <u>N.J.</u> at 49 ("The legislative history of the [FHA] makes it clear that it had two primary purposes: first, to bring an administrative agency into the field of lower income housing to satisfy the <u>Mount Laurel</u> obligation; second, to get the courts out of that field."). Such a construction of the CRA would be incompatible with one of the fundamental purposes of the FHA.[10] <u>See</u> <u>Tumpson</u>, <u>supra</u>, 218 <u>N.J.</u> at 478-79. Indeed, CDA has not cited a single case in which a developer was awarded counsel fees in <u>Mount Laurel</u> litigation.[11]

---

[10] We note that, at the present time, the Court has suspended operation of the FHA provisions giving compliant municipalities substantial protection from builder's remedy lawsuits, and has created an alternative process. <u>In re Adoption of N.J.A.C. 5:96 & 5:97</u>, 221 <u>N.J.</u> 1 (2015); <u>see</u> <u>N.J.S.A.</u> 52:27D-301 to -329. The Court rendered that decision due to COAH's repeated failure to adopt valid third round fair share regulations. <u>In re Adoption</u>, <u>supra</u>, 221 <u>N.J.</u> at 5-6. However, COAH's current non-compliance with its statutory responsibilities has no bearing on our interpretation of the CRA, which was enacted in 2004. <u>See</u> <u>id.</u> at 34 (acknowledging the Legislature's preference, expressed in the FHA, for administrative remedies instead of litigation).

[11] CDA's reliance on <u>Dunn v. State Department of Human Services</u>, 312 <u>N.J. Super.</u> 321 (App. Div. 1998), is misplaced. That case construed the Federal Fair Housing Act, which conferred both standing and a right to counsel fees upon prevailing, to any person "aggrieved" by a discriminatory act. The definition of "aggrieved" was very broad, encompassing any person who "claims to have been injured by a discriminatory housing practice." <u>Id.</u> at 331 (quoting 42 <u>U.S.C.A.</u> § 3602(i)(1)).

## VII

To summarize, we find that the trial court's decisions, which resulted in the orders challenged here, were supported by sufficient credible evidence and were legally correct. To the extent not specifically addressed herein, the parties' arguments are without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). Accordingly, we affirm on the appeal and the cross-appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5822-12T2