106 N.J. Super. 182 (1969)
254 A.2d 545
EVELYN WILSON, COMPLAINANT-RESPONDENT,
v.
SIXTY-SIX MELMORE GARDENS, A NEW JERSEY CORPORATION, BERNARD TULCHINSKY AND ANDREE BUILA, RESPONDENTS-APPELLANTS,
v.
NEW JERSEY DIVISION ON CIVIL RIGHTS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 28, 1969.
Decided June 20, 1969.
*183 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Jack Borrus argued the cause for appellants (Messrs. Borrus, Goldin & Foley, attorneys).
Mr. Stephen Skillman, Deputy Attorney General, argued the cause for respondent Division on Civil Rights (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. John J.P. Ryan, Deputy Attorney General, on the brief).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Appellants appeal from the findings, determinations and order of the Director of the Division on *184 Civil Rights (Division), made on recommendation of a hearing examiner after a hearing of a complaint of unlawful discrimination by them in the negotiations for rental of a $95 per month apartment to Evelyn Wilson and Elgin Mason (her fiance), applicants therefor.
The negotiations had not reached the stage of outright refusal of the apartment when the complaint was filed.[1] The complaint was based upon material differences in treatment by appellants of Wilson and Mason, Negroes, who applied for the apartment in response to an advertisement, in comparison with that accorded a Mrs. Stone, a "white tester," who pretended to apply for the same apartment the next day. Without here detailing all the proofs, we think the evidence was such as to permit the fact-finder to determine that appellants' agent treated Wilson and Mason in a manner designed to discourage their interest in the apartment while encouraging Stone to take it. For example, Wilson and Mason were required to fill out an application form in full and told that it would take ten days to two weeks for a credit check to clear; also, that they would be notified only if they were found acceptable, and they could "probably find something better somewhere else."
On the other hand, the agent accepted from Mrs. Stone only a partially filled-out application form, volunteered to her the favorable features of the apartment and the parking facilities, said she could have the apartment within four days, and made no reference concerning the time it would take to process the application. Proof of treatment of a Negro tester-applicant by the agent the same day tended to corroborate the charge of color-bias.
We find substantial credible evidence on the whole record to support the finding of the Division that the apartment *185 owner by its agent "intentionally discouraged" Wilson and Elgin from renting the apartment, impliedly because of their color. In so doing we do not necessarily concur in all the subordinate findings or inferences of the examiner in relation to the conclusion that use of a credit check by appellants was a device designed to avoid rentals to Negroes, but we do find the conclusion itself had sufficient credible support in the proofs, taken in entirety, to survive judicial review. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962).
Appellants contend that discouragement of a member of an unwanted race is not discrimination in rental, within the statute, where there has been no refusal to rent as of the time of the filing of the complaint. We disagree. N.J.S.A. 10:5-12(g)(1) is not confined to refusals to sell or lease real property. It also makes it unlawful "otherwise to deny to or withhold from" (emphasis added) any person real property on a discriminatory basis related to race. Moreover, the other provisions of the law should be read with N.J.S.A. 10:5-4 which provides, pertinently:
"All persons shall have the opportunity to obtain * * * publicly assisted housing accommodation and other real property, without discrimination * * * subject only to conditions and limitations applicable alike to all persons" (Emphasis added)
Read broadly, the quoted sections of the Law Against Discrimination make it manifest that the legislation is aimed at subtle and covert activities designed to defeat its policy as well as at outright and blatant violations. It may be assumed that the Legislature was cognizant that effective discrimination in the sale or rental of realty can be and is commonly achieved by discouragement as well as by flat refusal. The unwanted get the intended message by masked indirection as surely as by a "Whites Only" sign, and only a foolish landlord would today use the latter technique. The deliberate use of tactics of discouragement, whether by delay, credit investigations, withholding of material information, or by more subtly suggesting the applicant is unwelcome constitutes *186 a violation of the statute if the practice is applied selectively to a particular unwanted race, and for the purpose of preventing a consummation of a sale or rental transaction. See Jackson v. Concord Company, 54 N.J. 113, 119 (1969); cf. Clover Hill Swimming Club v. Goldsboro, 47 N.J. 25, 36 (1966); Holland v. Edwards, 307 N.Y. 38, 119 N.E.2d 581, 584, 44 A.L.R.2d 1130 (Ct. App. 1954); Browning v. Slenderella Systems of Seattle, 54 Wash.2d 440, 341 P.2d 859, 862 (Sup. Ct. 1959).
Appellants' complaint as to the precipitous action of the Division in, and the lack of investigation prior to, making the finding of probable cause, is irrelevant to the merits of the adjudication on full hearing.
Judgment affirmed.
NOTES
[1] However, the president of the defendant corporation testified that he would not rent to Wilson and Elgin because the credit report of the latter was unsatisfactory. (He had been refused a loan.) There was no fault with Wilson's rating. Their combined income was over $10,000 per annum.