**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1453-23

BRETT T. DUFFY,

    Plaintiff-Appellant,

v.

THE ABSECON POLICE
DEPARTMENT, THE CITY OF
ABSECON, former ABSECON
CHIEF OF POLICE DAVID
RISLEY, ABSECON MAYOR
JOHN ARMSTRONG, ABSECON
OFFICER CHRISTOPHER
CALVILEER, THE OFFICE OF THE
PROSECUTOR OF ATLANTIC
COUNTY, OFFICE OF THE
ATTORNEY GENERAL OF NEW
JERSEY, COUNTY OF ATLANTIC,
THE ATLANTIC COUNTY
SHERIFF'S OFFICE, VICINAGE I
OF SUPERIOR COURT, THE NEW
JERSEY ADMINISTRATIVE OFFICE
OF THE COURTS, JUDGES JULIO
MENDEZ, A.J.S.C., MICHAEL
J. BLEE, J.A.D., ACTING AOC
ADMINISTRATIVE DIRECTOR,
and THE STATE OF NEW JERSEY,

    Defendants-Respondents.

_____

Argued June 3, 2025 – Decided July 30, 2025

Before Judges Gummer, Berdote Byrne, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0480-16.

Thomas B. Duffy argued the cause for appellant (Duffy Law Group, attorneys; Thomas B. Duffy, on the briefs).

Vanessa E. James argued the cause for respondents Absecon Police Department, City of Absecon, former Absecon Chief of Police David Risley, Absecon Mayor John Armstrong, and Absecon Police Officer Christopher Cavileer (Barker, Gelfand, James & Sarvas, PC, attorneys; Vanessa E. James, on the brief).

Elizabeth Merrill, Deputy Attorney General, argued the cause for respondents Hon. Michael J. Blee, J.A.D., Hon. Julio L. Mendez, A.J.S.C, Superior Court of New Jersey, Vicinage I, Administrative Office of the Courts, Atlantic County Prosecutor's Office, Office of the Attorney General, and State of New Jersey (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Elizabeth Merrill, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff appeals orders dated April 1, 2021, and May 25, 2023 denying his motions for leave to file an amended complaint and orders dated May 26, 2023, and July 10, 2023, granting defendants' motions to dismiss the complaint

with prejudice.[1]  This is the second time we address this matter on appeal, as we previously remanded plaintiff's case to the trial court because plaintiff had improvidently appealed the April 1, 2021 order, which was interlocutory. Duffy v. Absecon Police Dep't, No. A-2611-20 (App. Div. Feb. 28, 2023) (slip op. at 6-7).  On our remand, the trial court dismissed plaintiff's complaint with prejudice and denied his cross-motion to further amend his complaint.  We affirm the denial of plaintiff's motion for leave to amend due to the futility of plaintiff's legal claims, despite his numerous opportunities and attempts to amend his complaint, and affirm, in part, the trial court's dismissal of plaintiff's complaint, but conclude the trial court should have dismissed the complaint without prejudice as plaintiff has pled facts that may suggest the fundament of a cause for a civil rights claim involving a warrantless search of his vehicle.

## I.

Because these claims have not advanced beyond the pleading stage, we consider all alleged facts from plaintiff's complaint as true, as we must when determining whether a motion to dismiss has been correctly granted.

---

[1]  Plaintiff identified several other orders in his second amended notice of appeal.  However, the focus of plaintiff's merits brief is on these orders dismissing the complaint and denying the motions for leave to amend.  "An issue that is not briefed is deemed waived upon appeal."  N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015).

Sparroween, LLC v. Township of West Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017).

Plaintiff, who had been previously diagnosed with Asperger's syndrome,[2] maintains that on April 8, 2014, when he was twenty-one-year-old, he completed and attempted to file a firearm purchaser identification card ("FPIC") application form but was advised he did not need an FPIC nor a hunting license for a pellet gun. On April 17, 2014, plaintiff fired his pellet gun into a marsh area next to Absecon Creek. Plaintiff and an unnamed, unknown third person who is not party to this litigation engaged in a verbal altercation about plaintiff firing his pellet gun into the marsh. Plaintiff then unloaded the pellet gun and stowed it in a case in the trunk of his car with the trigger in a locked position.

Plaintiff then drove to a shooting range but was pulled over by Absecon police. Plaintiff immediately asked the police to call his father, who is a lawyer

---

[2] In 2013, Asperger's syndrome was removed from its own distinct classification and replaced with a general diagnosis of scalable severity of Autism Spectrum Disorder, which can manifest with a diverse array of symptoms and behaviors. See Nat'l Inst. of Child Health and Human Dev., About Autism, Nat'l Inst. of Mental Health, https://www.nichd.nih.gov/health/topics/autism/conditioninfo (last visited July 8, 2025); Autism Spectrum Disorder, Health, and Education, https://www.nimh.nih.gov/health/topics/autism-spectrum-disorders-asd/index.shtml (last visited July 8, 2025). There is no evidence in the record that plaintiff has been deemed incompetent, and no guardianship order was provided as part of the record on appeal.

A-1453-23

licensed to practice law in New Jersey and is representing him in this matter. Police arrested plaintiff without calling his father. Plaintiff alleges many aspects of his arrest were improper, including the police unsheathing a machete in his vehicle, searching his vehicle without his consent, failing to issue Miranda[3] warnings, and denying him his right to counsel.

Plaintiff alleges that while he was at the Absecon police station, he was denied his anxiety medication and again denied contact with his father, with officers allegedly telling him, "your father says 'you're on your own.'" After this, plaintiff attempted to commit suicide in his holding cell by hanging himself with a hooded sweatshirt. Absecon police discovered him in the process, prevented him from carrying out the act, and transported him to the hospital. The crisis officer told plaintiff he had to go to the psychiatric intervention program unit in Atlantic City.

Plaintiff alleges he was treated at the hospital with various psychiatric medications and improperly questioned by police while under the influence of medication. He also alleges Absecon police refused to allow hospital personnel to contact his father. Plaintiff alleges at some point the officers unlawfully brought him back to the police station before he was medically discharged.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1453-23

Although he alleges police refused to contact his father, his father had learned of his arrest and was waiting at the police station when the police returned and, according to plaintiff, he was kept from his father for another forty minutes. Plaintiff also claims while the arresting officer was gathering paperwork to charge plaintiff, he stated, "I'm going to throw the book at this retard." Plaintiff alleges at least one unnamed officer heard the "retard" comment and advised the officer not to refer to plaintiff in that manner.

Plaintiff was indicted and charged with possession of a machete and pellet gun for an unlawful purpose in violation of N.J.S.A. 2C:39-5(d). A superseding indictment was issued on June 3, 2014, where plaintiff was also charged with possession of a firearm without a FPIC.

On April 25, 2014, plaintiff obtained a pretrial intervention ("PTI") program application. On April 29, 2014, he took the completed PTI application to the courthouse and applied for a public defender. He alleges the application was intentionally lost by unnamed court personnel. The trial judge who arraigned plaintiff "remembered seeing the PTI form," and he ordered the application be replaced immediately. Plaintiff was recommended for a six-month period of PTI that same day. The prosecutor initially opposed PTI,

stating it was unavailable for people with mental illnesses, and insisted a different "mental illness" probation was more appropriate.

Plaintiff was ultimately accepted into the PTI program in February 2017, which he completed in February 2018. One unlawful weapons charge was dismissed on December 2, 2016, because of his pending application to PTI. After completing PTI, the remaining charges were dismissed on February 22, 2018.

Plaintiff filed the first complaint in this matter on April 18, 2016. Both the initial complaint and the first amended complaint contained five causes of action: 1) violation of the Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134; 2) violation of Section 504 of the "Rehabilitation Act" ("RA"), 29 U.S.C. § 794; 3) violation of the Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -45[4]; 4) disability harassment pursuant to the ADA, RA, and LAD; and 5) violation of federal law, 42 U.S.C. § 1983, and state law pursuant to the New Jersey Civil Rights Act ("NJCRA"),

---

[4] Plaintiff filed the complaint exactly two years and one day after the alleged events of April 17, 2018. It is well-settled law in this state that the statute of limitations for an LAD claim is two years from when the cause of action accrued. Alexander v. Seton Hall Univ., 204 N.J. 219, 228 (2010).

A-1453-23

N.J.S.A. 10:6-2. Plaintiff's unverified complaint also sought injunctive relief pursuant to the New Jersey Declaratory Judgment Act, N.J.S.A. 2A16-51 to -62.

On February 20, 2017, defendants removed the matter to the federal district court in New Jersey based on federal-question jurisdiction. Once there, defendants requested a pre-motion conference regarding dismissal, and when plaintiff did not timely respond, the district court sua sponte ordered plaintiff to show cause as to why he had failed to respond and why the case should not be dismissed. Plaintiff filed multiple motions attempting to amend his complaint up to a proposed fifth amended complaint, but the district court denied those motions. Ultimately, plaintiff filed a stipulation of dismissal of the federal claims, and the case was remanded to the Superior Court.

On remand, plaintiff moved to file a second amended complaint in the Law Division, which was the sixth proposed amended complaint across both state and federal dockets. The proposed second amended complaint purported to raise three separate causes of action: 1) LAD discrimination and retaliation; 2) disability harassment pursuant to the LAD; and 3) declaratory judgment for direct violation of the NJCRA.

Plaintiff's proposed second amended complaint alleges three broad categories of harm inflicted on him by different parties. The first group of

A-1453-23

claims involve the purported illegal search of his vehicle following the traffic stop, the police's failure to administer <u>Miranda</u> warnings before questioning him, their failure to call plaintiff's father at his request, and their failure to allow plaintiff's father to be present during defendant's interrogation. These claims are alleged against the Absecon Police Department, The City of Absecon, David Risley (as former chief of police of Absecon), John Armstrong (as former mayor of Absecon), and Absecon police officer Christopher Caviller, (collectively the "Absecon defendants").

The second group of claims involve plaintiff's suicide attempt while in police custody, subsequent hospitalization, and removal from the hospital against medical advice and is also against the Absecon defendants.

The third group of claims involve the alleged purposeful mishandling of court documents, including plaintiff's initial PTI application, prosecutorial misconduct in initially opposing PTI, and delays in admission to PTI, and is alleged against The Office of the Prosecutor of Atlantic County, Prosecutor Damon G. Tyner ("solely in his official capacity"), Office of the Attorney General of New Jersey, Attorney General Gurbir S. Grewal ("solely in his official capacity"), Vicinage 1 of the Superior Court, The New Jersey Administrative Office of the Courts ("AOC"), Judges Julio Mendez, A.J.S.C.,

9

and Glen Grant, Acting AOC Director ("solely in their official capacity and not as judges"), The State of New Jersey, and John Does 1-100 (collectively, the "State defendants").

The court denied the motion to file a second amended complaint. In its reasons set forth on the record, the court denied leave to file the proposed amended complaint pursuant to Rule 4:9-1 because the proposed pleading did not meet the general pleading requirements of Rule 4:5-7. In addition, the court found the causes of action pled were futile and defendants had incurred substantial prejudice in the seven years that had passed since the events at issue occurred, including five years of actual litigation, which had not progressed beyond the pleading stage.

Regarding Rule 4:5-7, the court acknowledged the liberal pleading standards but gave specific examples of what rendered the complaint deficient. It found the complaint difficult to follow and, therefore, difficult for defendants to answer. The court found legal theories were conflated with allegations in the numbered paragraphs, and the causes of action, when finally stated, were not simple, concise, nor direct pursuant to Rule 4:5-7.

Specifically, regarding the first cause of action, the court found "it is a not a short and concise statement of facts. It is sentence after sentence of description

of the cause of action . . . ."  Regarding the second cause of action, the court found "[i]t's unclear . . . whether . . . this count . . . is a LAD harassment disability claim against the State defendants [because] the paragraph[s] 239 to 240 [] also appear[] to set forth a cause of action for LAD discrimination, but it's not clear whether that's part of the same count two."  Finally, with respect to count three, the court noted a parenthetical naming unknown individuals which stated "[i]f [plaintiff] cannot [sue] State entities under the NJCRA, [the cause of action] would also include the State executives, the two judges, the [Attorney General], and the prosecutor, solely in their official capacities," and indicated this was another instance demonstrating plaintiff's own uncertainty about what causes of action he wished to pursue against which defendants.

Regarding the futility consideration of Rule 4:9-1, see Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006), the court found several immunities were applicable to bar the claims against defendants.  Noting plaintiff apparently intended to sue the State entities and sue the individuals only if suing the entities failed, the court cited Allen v. Fauver, 167 N.J. 69 (2001), in holding the State must waive immunity and consent to being sued.

The court also found the LAD claims were moot because they were based on plaintiff being denied access to the PTI program, which he voluntarily had

11

enrolled in, was accepted in, and completed. The court found plaintiff's theory and causal nexus stemmed from the allegation an unknown and unnamed court employee allegedly "purposefully" destroyed plaintiff's original PTI application. Alternatively, the court also found applicable litigation privileges to statements made by individual state officers in sanctioned settings, citing Erikson v. Marsh & McLennan Co., 117 N.J. 539 (1990), and Rainer's Diaries v. Raritan Valley Farms, 19 N.J. 552 (1955).

Citing N.J.S.A. 59:2-3(b), the court noted, in addition to individual immunities, public entities also enjoy statutory immunity for legislative, judicial, and administrative action or inaction that insulated the entities absent criminal, fraudulent, or malicious acts of willful misconduct. Noting the specific absence of such allegations, or a causal nexus of support, the court ruled the pleadings likewise failed for those reasons. The court also cited federal law to hold immunity was applicable to bar plaintiff's claims, and irrespective of that holding, the complaint was not sufficiently pled.

With respect to the injunctive relief sought, the court found plaintiff had not adequately set forth the factors of Crowe v. DeGioia, 90 N.J. 126 (1982). The court determined plaintiff had conceded he did not demonstrate he had displayed suicidal tendencies and therefore the Absecon defendants' alleged

12                                                                    A-1453-23

violation of NJCRA failed pursuant to Estate of Cills v. Kaftan, 105 F. Supp. 2d 391 (D.N.J. 2000). Finding no immediate or irreparable harm could befall plaintiff, the court likewise noted the claim for injunctive relief pursuant to the NJCRA could not be sustained clearly and convincingly. Finally, regarding the alleged constitutional violations stemming from defendant's arrest and indictment, the judge found PTI constituted a favorable termination pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).

In deciding whether plaintiff should be allowed leave to file another amended complaint, the trial court considered the complex procedural history of the case and noted part of the prejudice against defendants included not solely the seven years already spent but also the prejudice in "attempting to figure out how to answer this complaint" if it were allowed to proceed. Based on those considerations, the court denied plaintiff's motion for leave to file the second amended complaint and denied leave to file another motion to amend the complaint.

Plaintiff appealed. We dismissed the appeal without prejudice as improvidently filed based on the order's lack of finality as a motion to dismiss was never filed by defendants and because plaintiff had failed to seek leave to appeal. Duffy, slip op. at 6-9. On remand, defendants moved to dismiss

plaintiff's complaint, and plaintiff filed a cross-motion for leave to amend his complaint. The trial court granted defendants' respective motions to dismiss for failure to state a claim[5] with prejudice and denied plaintiff's cross-motion for the same reasons previously stated. This second appeal followed.

## II.

We review a trial court's decision denying leave to file an amended pleading pursuant to Rule 4:9-1 for an abuse of discretion. See Notte, 185 N.J. at 501. Although we recognize motions for leave to amend are generally granted liberally, we must determine "whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Ibid. Even if "no cognizable prejudice will inure [to defendants] by reason of the amendment sought by [plaintiff][,] . . . . the requested amendment is examined to determine whether it is futile, that is whether the amended claim will nonetheless fail and, hence, allowing the amendment would be a useless endeavor." Ibid. "In other words, there is no point to permitting the filing of an

---

[5] The State defendants' motion to dismiss was unopposed. "[O]ur appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available." J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)); see also Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 145 (App. Div. 2018) (applying "well-settled" principle that appellate court will not consider an issue that was not raised before the trial court).

amended pleading when a subsequent motion to dismiss must be granted." Ibid. (quoting Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 257 (App. Div. 1997)).

We consider a trial court's decision to dismiss a complaint for failure to state a claim pursuant to Rule 4:6-2(e) de novo, reviewing the complaint in the same manner as the motion judge. Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 69 (App. Div. 2023). "'At this preliminary stage of the litigation[,]' we are 'not concerned with the ability of plaintiff[] to prove the allegation contained in the complaint.'" Ibid. (first alteration in original) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). Despite this leniency, "we will affirm the dismissal of a 'complaint if it has failed to articulate a legal basis entitling plaintiff to relief.'" Id. at 70 (quoting Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005)). And, although, "[o]rdinarily, dismissal for failure to state a claim is without prejudice," Cona v. Township of Washington, 456 N.J. Super. 197, 214 (App. Div. 2018), "there are times when a dismissal with prejudice is mandated, such as when the facts are 'palpably insufficient to support a claim upon which relief can be granted' and when 'discovery will not give rise to' a successful claim.'" Big Smoke LLC v. Township of West Milford, 478 N.J. Super. 203, 226 (App. Div. 2024) (first

15

quoting <u>Rieder v. State</u>, 221 N.J. Super. 547, 552 (App. Div. 1987), then quoting <u>Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.</u>, 237 N.J. 91, 107 (2009)).

<u>The proposed LAD claims</u>

Plaintiff alleges LAD violations against the Absecon and State defendants and their offending employees, citing various provisions of the LAD including N.J.S.A. 10:5-12, subsections (d), (e), (f), and the definitions section, N.J.S.A. 10:5-5.

Plaintiff alleges he was denied two forms of accommodation. First, plaintiff alleges, as against the Absecon defendants, "telling [him] his accommodation (his dad) is not coming is an anti-accommodation – it's purely malicious . . . . [and] it still fits within an [sic] LAD framework of analysis . . . ." Plaintiff also argues, as against the State defendants, the prosecutor's attempts to withhold PTI or recommend "mental illness probation" instead of PTI "is no different from any [case] in which a state program is withheld from a person due to a disability," citing LAD provisions N.J.S.A. 10:5-5 and -12 as the statutory authority for his protection against discrimination.

Defendants argue there is no indicia of discrimination under which any of plaintiff's claims are viable. They highlight "[plaintiff] insists he was a victim

16

of discrimination, but he fails to explain how anything that allegedly happened to him was a consequence of discrimination." Defendants argue encountering delays and lost paperwork at the trial level is not prima facie evidence the criminal justice system discriminated against him because of his disabilities.

The specific LAD provision plaintiff cites, N.J.S.A. 10:5-12, has been applied almost exclusively in labor and employment contexts. See, e.g., Meade v. Twp. of Livingston, 249 N.J. 310, 328 (2021) ("The law is thus intended to protect 'the civil rights of individual aggrieved employees' as well as 'the public's strong interest in a discrimination-free workplace.'" (quoting Rios v. Meda Pharm., Inc., 247 N.J. 1, 9 (2021)); see also Smith v. Millville Rescue Squad, 225 N.J. 373, 389-90 (2016) (determining scope and limitation of the LAD as applied to employee's marital status).[6] Although we recognize LAD claims require "special rules of interpretation . . . . in order to advance [the LAD's]

---

[6] Of all instances where our published case law has cited N.J.S.A. 10:5-12, all but five at the time of this opinion have been in the employment context, and those outliers remain distinguishable as they pertain to specific LAD provisions expressly prohibiting housing discrimination. See, e.g., Polk v. Cherry Hill Apts., Inc., 62 N.J. 55, 56-57 (1972); N.J. Realtors v. Township of Berkeley, 479 N.J. Super. 379, 396-98 (App. Div. 2024); Cranford Dev. Assocs., LLC v. Township of Cranford, 445 N.J. Super. 220, 239 (App. Div. 2016); Wilson v. Sixty-Six Melmore Gardens, 106 N.J. Super. 182, 185-86 (App. Div. 1969); Stoddard v. Rutgers, 24 N.J. Tax 187, 200 (Tax 2008).

beneficial purposes" and we generally find "[t]he more broadly [the LAD] is applied, the greater its antidiscriminatory impact," our Supreme Court has not specifically found N.J.S.A. 10:5-12 to apply outside of a labor-and-employment or housing context. See Smith, 225 N.J. at 390 (third alteration in original) (quoting Nini v. Mercer Cnty. Cmty. Coll., 202 N.J. 98, 108, 115 (2010). Plaintiff relies only on dicta and modified holdings in an attempt to bolster his arguments, specifically citing to a modified holding of Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587 (1993), to analogize claims of sexual harassment in the workplace with supposed LAD violations for anti-disability discrimination outside of the workplace. We decline to take such an attenuated legal leap.

To establish a prima facie LAD failure-to-accommodate claim,

> a plaintiff must demonstrate that he or she (1) "qualifies as an individual with a disability, or [] is perceived as having a disability, as that has been defined by statute"; (2) "is qualified to perform the essential functions of the [task], or was performing those essential functions, either with or without reasonable accommodations"; and (3) that defendant "failed to reasonably accommodate [his or her] disabilities."
>
> [Royster v. N.J. State Police, 227 N.J. 482, 500 (2017) (first and third alterations in original) (quoting Victor v. State, 203 NJ. 383, 410 (2010)).]

The pled section of the LAD does not apply to plaintiff in this context. Even if we were to give this section its most generous reading and apply it in this non-

18

employment or non-housing context, factually there is no allegation the Absecon police officers were made aware of plaintiff's disability when he requested his father to be called or that he identified his father as his lawyer. Additionally, with respect to the State defendants, there is no indication plaintiff was denied an accommodation as he requested, was accepted, and completed PTI.

Although other sections of the LAD generally protect non-employees from discrimination in the public-accommodations context,[7] those sections of the statute are not pled. Regardless, there is no evidence plaintiff requested nor was denied an accommodation, as plaintiff was a competent adult who requested his father, but did not alert police of his alleged disability, and did not claim his father's presence was needed to accommodate his disability. And, to the extent acceptance into PTI is the foundation for that claim, that issue is now moot as plaintiff was accepted into and completed the program.

Regarding his standing to seek declaratory relief related to the alleged LAD violation, plaintiff seems to assert this issue is capable of evading appellate review and urges us to assess the legality, generally, of barring people with mental disabilities from PTI. Otherwise, plaintiff cautions, "the State can

---

[7] See, e.g., L.W. ex. rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ., 189 N.J. 381, 403-05 (2007); Lasky v. Borough of Hightstown, 426 N.J. Super. 69, 80 (App. Div. 2012).

always take away 'standing' by granting PTI to those whom they know will raise significant arguments, whether in the criminal or civil courts, against their 'pet' discriminatory 'programs' of the Drug Court and 'Mental Illness' probation." Plaintiff urges us to review the unidentified prosecutorial "policy guidelines" that purportedly inform a prosecutor to recommend mental illness probation instead of PTI. We decline to address these issues, which are outside the scope of the issues on appeal. Similarly, plaintiff does not satisfy his burden to demonstrate how the trial court misapplied discretion in his ruling on this point, or plaintiff's failure to sufficiently plead adequate, pertinent, and sufficient facts pursuant to satisfy Rule 4:9-1. Even the most liberal reading of plaintiff's complaint cannot support any of plaintiff's claims pursuant to the LAD. We conclude the trial court properly denied plaintiff's motion to amend the complaint to allege these LAD claims, as they failed to state a claim upon which relief may be granted, and properly dismissed the complaint as to these counts.

The proposed NJCRA claims

The NJCRA provides:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those

20

substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

[N.J.S.A. 10:6-2(c).]

We have interpreted the NJCRA in tandem with the federal civil rights act, 42 U.S.C. § 1983, as the NJCRA is modeled after the federal corollary. Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011).

Plaintiff's allegations that he was interrogated without being giving Miranda warnings, or improperly questioned while medicated, fail to state a claim upon which relief may be granted pursuant to NJCRA because these are procedural safeguards that are implicated only when used against a plaintiff at trial. See State v. Hager, 462 N.J. Super. 377, 386 (App. Div. 2020) ("Because the [Miranda] violation occurs 'only upon the admission of unwarned statements into evidence at trial,' '[t]he exclusion of unwarned statements . . . is a complete and sufficient remedy for any perceived Miranda violation.'" (omission and second alteration in original) (quoting United States v. Patane, 542 U.S. 630, 641-42 (2004))). Any alleged Brady violation also does not amount to a cognizable NJCRA claim. See Leone v. Township of Deptford, 616 F. Supp. 2d

21

527, 535 (D.N.J. 2009) (finding a 1983 claim premised on a <u>Brady</u> violation legally impossible because the plaintiff was never convicted of a crime but rather acquitted, therefore any non-disclosed exculpatory evidence was never improperly used against him).

Plaintiff's assertion that the denial of the presence of his father as his counsel supports a NJCRA claim likewise fails. Plaintiff cannot maintain a claim for violation of his Sixth Amendment right to counsel because the right did not yet attach, as plaintiff's complaint alleges he was "interrogated" by police in April 2017 but indicted in May 2018. <u>State v. P.Z.</u>, 152 N.J. 86, 110 (1997) ("During the pre-indictment period of criminal investigation, a law enforcement officer could have questioned defendant without implicating his Sixth Amendment or Article I right to counsel."); <u>see also</u> <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972) ("[I]t has firmly been established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him . . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."); <u>Davis v. Township of Paulsboro</u>, 421 F. Supp. 2d 835, 847 (D.N.J. 2006) ("The Sixth Amendment right to counsel attaches at the initiation of formal charges. Thus, any potential violation of [plaintiff's] Sixth

A-1453-23

Amendment rights must have occurred after criminal charges were formally initiated against him." (citations omitted)).

And, notwithstanding the fact plaintiff's Sixth Amendment right had not yet attached, his alleged deprivation of counsel would not entitle him to monetary relief pursuant to the NJCRA in this matter. Cf. United States v. Morrison, 449 U.S. 361, 365 (1981) ("The . . . [alleged Sixth Amendment violation] identified [must have] had or threaten[ed] some adverse effect upon the effectiveness of counsel's representation or ha[ve had] produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding[.]")

The suicide, or attempted suicide, of a pretrial detainee may support recovery pursuant to the NJCRA or Section 1983 if "(1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." Colburn v. Upper Darby Township, 946 F.2d 1017, 1023 (3d Cir. 1991). Here, even if plaintiff had a "particular vulnerability to suicide," his complaint does not state the officers had any indication of such vulnerability. Plaintiff alleges only that he was denied his anxiety medication and left in his holding cell with shoelaces,

23

belt, and hoodie. Plaintiff has not sufficiently pled the officers had knowledge of a "particular vulnerability to suicide," as this phrase means there is "a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur," and "the risk of self-inflicted injury" must be both "great" and "sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." Colburn, 946 F.2d at 1024, 1025 (internal quotation marks omitted). Because plaintiff did not sufficiently allege this claim, the court properly denied his motion to amend the complaint and properly dismissed this claim.

However, regarding plaintiff's allegation police violated his civil rights by illegally searching his vehicle, we conclude this allegation is not rendered legally futile from the outset. We have held "police officers may incur liability under Section 1983 if they execute a search [] in an unreasonable manner." Gurski v. N.J. State Police Dep't, 242 N.J. Super. 148, 160 (App. Div. 1990). Accordingly, the Absecon officers' alleged warrantless and non-consensual search of plaintiff's vehicle may implicate the NJCRA and may survive the pleading stage. Nevertheless, plaintiff has failed to plead what damages, if any, would be recoverable from that alleged violation. Instead, he has pled only monetary damages stemming from the alleged delay in being accepted into the

PTI program. Therefore, the trial court properly dismissed that claim but should have done so without prejudice.

Although plaintiff may plead a cogent claim against the Absecon police defendants, the Absecon Police Department, David Risley, as former chief of police of Absecon, and Absecon police officer Christopher Caviller, pursuant to NJCRA, the remaining Absecon defendants, the City of Absecon and John Armstrong, as former mayor of Absecon, are immune from the claim pursuant to the facts pled. It is appropriate for defendants to assert immunity affirmative defenses in support of their motion to dismiss. See Mueller v. Kean Univ., 474 N.J. Super. 272, 277 (App. Div. 2022) (affirming the trial court's grant of the defendants' Rule 4:6-2(e) motion premised on statutory immunity enjoyed by the defendants); see also Brown v. State, 230 N.J. 84, 98-99 (2017) ("Ordinarily, application of the defense of qualified immunity is a legal question for the court rather than the jury; therefore, the defense should be raised and resolved 'long before trial.'" (quoting Schneider v. Simonini, 163 N.J. 336, 356 (2000))).

With respect to these non-police Absecon defendants, we note municipalities are generally not liable for the actions of their employees unless such actions were done in furtherance of a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

25

official policy," as to create a deprivation of constitutional rights. Stomel v. City of Camden, 192 N.J. 137, 145 (2007) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). Our Supreme Court has also held "[t]he doctrine of qualified immunity 'shields law enforcement officers from personal liability for civil rights violations when the officers are acting under the color of law in the performance of official duties,' unless the officers' 'performance is not objectively reasonable.'" Harris v. City of Newark, 250 N.J. 294, 299 (2022) (quoting Morillo v. Torres, 222 N.J. 104, 107-08 (2015)).

Here, plaintiff pled the Absecon police defendants searched his car without his permission, a potential violation of his substantive constitutional rights. Because a warrantless, non-consensual search of plaintiff's vehicle would be not objectively reasonable, see State v. Hagans, 233 N.J. 30, 38 (2018), the Absecon police defendants would—at this stage of the litigation—be unable to rely upon qualified immunity for dismissal of that claim. The non-police Absecon defendants enjoy immunity due to plaintiff's inability to identify a specific policy or custom violating his substantive constitutional rights. See Stomel, 192 N.J. at 145.

The trial court also correctly found the State defendants immune from the claims asserted against them. See Royster, 227 N.J. at 494 ("New Jersey has

'long recognized that an essential and fundamental aspect of sovereignty is freedom from suit by private citizens for money judgments absent the State's consent.'" (quoting Allen, 167 N.J. at 73-74 (2001)); Erickson v. Marsh & McLennan Co., 117 N.J. 539, 563 (1990) ("A statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability."); K.D. v. Bozarth, 313 N.J. Super. 561, 568 (App. Div. 1998) ("Judges are absolutely immune from liability for their judicial acts. . . . even as to judicial acts that are wrong, malicious, or beyond the judge's authority."); N.J.S.A. 59:2-3(b) ("A public entity is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature."); N.J.S.A. 59:3-8 ("A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment.").

We affirm the trial court's denial of plaintiff's motion for leave to amend his complaint because the proposed second amended complaint contains futile claims unable to survive our pleading standards. However, a fundament of a cause of action alleging against the Absecon police defendants committed a violation of the NJCRA based on claims of an illegal search may survive the pleading stage if adequately pled. Accordingly, although we affirm the trial

27

court's dismissal of plaintiff's complaint, we reverse its decision to do so with prejudice to provide plaintiff opportunity to file, should he choose to do so, a second amended complaint against the Absecon police defendants consistent with this opinion and the applicable Rules of Court. Plaintiff's claims against all State defendants and Absecon non-police defendants are either legally futile or precluded by various immunities. We direct plaintiff to file the amended complaint, should he choose to file one, within thirty days of the date of this opinion. That time frame may be extended by the consent of the parties or by order of the trial court. We preclude plaintiff from filing any other claim where we have affirmed its dismissal. We take no substantive position with respect to the merit of any refiled claim.

To the extent we have not addressed any of plaintiff's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1453-23